**Suzano Salinas PEREZ, III, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 52782.**

Court of Criminal Appeals of Texas.

March 16, 1977.

Philip S. Greene and Dan B. Gerson, Houston, for appellant.

Carol S. Vance, Dist. Atty., William W. Burge and Robert N. Burdette, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for burglary with intent to commit theft under the former code. Trial was before the court which found appellant guilty and assessed punishment at twelve years.

The sufficiency of the evidence is not challenged. The offense occurred at a large apartment complex on Hillcroft Street in Houston. The complainant, Calvin Daetwyler, lived in Apartment 133. He left home early in the morning of July 17, 1973, and returned to the apartment complex "sometime after lunch." He went to Apartment 133 with the manager and discovered that someone had entered it without consent. The entry had been made by

someone "somehow" opening a wooden gate to the patio in back and by forcing open a patio sliding glass door. A gold watch which had belonged to Daetwyler's grandfather was among the items which had been stolen from the apartment.

Alice Patrick, an employee of the apartment complex, saw a stranger fitting appellant's description walking past the manager's apartment between 12:15 and 12:30 p.m. He was looking up at the apartment and carrying a briefcase. Afterwards, she reported the event and gave a description of the stranger to Officer Ward, the security guard who resided at the complex. The officer had been summoned by the manager to investigate the burglary.

At approximately 1:30 p.m., Ward observed appellant "peeking through the fence" behind complainant's apartment. Appellant had his hand on the fence gate as if he were about to enter the enclosed area, and the officer heard the gate latch "clicking." Appellant was carrying a briefcase. Ward identified himself and asked appellant if he could help him. Appellant replied that he was looking for the Talberts who lived in that apartment. The officer told appellant that no Talberts lived in Apartment 133 and asked him who he was. Appellant responded that his name was "Alonzo" and that he would like to determine where the Talberts resided. Ward and appellant then went to the manager's apartment "to check the rent roll."

Officer Ward and the manager checked the rent roll and determined that no one named Talbert lived in the apartment complex. The officer then advised appellant that a burglary had occurred earlier and requested identification. Appellant responded that he had no identification but that he was on the apartment grounds selling Christmas cards. He opened his briefcase and showed the officer that it did contain Christmas cards. Ward told appellant he did not believe him because it was July and called the Houston Police Department.

While awaiting the arrival of the police, appellant became "very nervous and got up as if he was going to leave the room." At that point Ward conducted a pat down search. The officer found an object in appellant's pocket and asked what it was. Appellant pulled a watch out of the pocket and replied that he had found it on the other side of town the previous day. Complainant then entered the manager's office and identified the watch as part of the stolen property.

■ Appellant's sole contention is that the watch was obtained as the result of an illegal search and seizure. Ward testified that appellant was not under arrest when they went to the manager's apartment to check the rent roll, but that he would not have let him leave because

> "The apartment had been burglarized and I had a description of a suspect and he fit the description.
> "Q. But you did not have a description of someone who—that someone had given you that they saw broke into an apartment, did you?
> "A. That he had broke into it?
> "Q. That anybody had broke into it?
> "A. No, just a suspect in the area."
>
> * * * * * *
>
> "THE COURT: Let me ask you, what information did you receive about any suspicious persons?
> "THE WITNESS: The maid on the project, she had told me—she had told the manager—the maid on the project had told the manager that they had seen a suspicious person walking around on the project, and I was called from my extra job. I work at a bank and I came over to my apartment project, and I talked to the maid and the manager, and they described this subject, you know, identically. Then, when I did, I walked around the corner. I was going back to the office. It appeared to me that Mr. Perez, he had his hand on the patio gate and it was clicking as I walked up to him, and it appeared to me that he was fixing to enter the apartment again.

"THE COURT: What information do you have with regard to him being a suspicious person or what?

"THE WITNESS: It was my opinion, Your Honor. I observed the subject peering through the planks. It has a—

"THE COURT: No, but excuse me. You said you had information from the maid and Mrs. Gladys?

"THE WITNESS: Right.

"THE COURT: About a suspicious person?

"THE WITNESS: Yes, sir.

"THE COURT: What information did they actually give you with regard to why they felt he might be suspicious?

"THE WITNESS: Both of them stated to me that that was the only person seen around Mr. Daetwyler's house, and he was walking back and forth and just in general didn't have any business on the project."

\* \* \* \* \* \*

"THE COURT: And you uncovered the watch as a result of the pat search?

"THE WITNESS: Yes, sir.

"THE COURT: Did you recognize it as a watch at the time you patted him down or did you think it might have been something else?

"THE WITNESS: No, sir. If Mr. Daetwyler hadn't walked in at the same time this all happened, I probably would have turned the subject loose in a few minutes."

■ Circumstances short of probable cause for arrest may justify temporary detention for purposes of investigation since an investigation is considered to be a lesser personal intrusion upon the security of an individual. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Ablon v. State,* 537 S.W.2d 267 (Tex.Cr.App.1976).

In the instant case, Officer Ward found appellant looking through the fence behind the burglarized apartment shortly after the burglary was discovered. Appellant looked as if he were about to enter the apartment's patio area. The officer knew that appellant fit the description of a stranger who

had been seen walking through the apartment grounds earlier. After appellant agreed to go to the manager's office with the officer to check the rent rolls, he told the officer he had no identification. Appellant also told what the officer thought was an implausible story about selling Christmas cards in mid-summer. The officer then called other officers. When appellant acted as if he were going to leave, the officer conducted a limited "pat down" search which yielded the stolen gold Elgin watch.

■ The purpose of a limited search after a temporary detention is not to discover evidence of crime but to allow the peace officer to pursue investigation without fear of violence. *Terry v. Ohio,* supra; *Wood v. State,* 515 S.W.2d 300 (Tex.Cr.App.1974). However, in *Terry* the Supreme Court of the United States stated:

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." See also *Cox v. State,* 442 S.W.2d 696 (Tex.Cr.App.1969).

We hold that the brief detention and subsequent frisk by the officer to have been reasonable under the circumstances. The evidence was properly admitted. It is clear from the record that the officer wanted to detain appellant long enough to investigate appellant's suspicious actions and statements. Ward testified that appellant was not under arrest when they went into the manager's office, that he did not call the officers until he discovered that appellant's stories were probably false, and that he would have "turned the subject loose in a few minutes" if the stolen watch had not been discovered. The officer would have shirked his duty if he had done less. There is no showing that appellant thought he was under arrest when he went to the manager's apartment to find out where the Talberts lived. After arriving there, he became nervous and acted as though he were going to leave. The officer than conducted a pat down search to maintain the status quo. When he did he felt an object

and asked appellant to take it out of his pocket. Before seeing the object he thought it was larger than a modern watch.

The judgment is affirmed.