**Hugh Winfield BREM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 55467.**

Court of Criminal Appeals of Texas, Panel No. 1.

Sept. 27, 1978.

Tom Mills, Jr., Dallas, for appellant.

Henry M. Wade, Dist. Atty., Gary Love, Bob Hinton and Tom Lillard, Asst. Dist. Attys., Dallas, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for aggravated rape. After a trial before a jury, the court assessed appellant's punishment at forty-five years confinement in the Texas Department of Corrections.

The sufficiency of the evidence to support the conviction is not challenged. The record reflects that on May 13, 1976, a little before 2:00 a. m., the prosecutrix was sleep-ing on a couch in the living room of her apartment. She woke up to see a man standing next to the couch, wearing only a white Tee-shirt and a stocking over his face, smelling strongly of cologne. The prosecu-trix testified that the man, whom she iden-tified as appellant, held a knife to her throat and had sexual intercourse with her without her consent. She testified that af-ter she thought he was gone she called the police and officers arrived at her apartment shortly thereafter. She also testified that some nine hours after the rape she identi-fied appellant in a lineup as her assailant.

Police Officer Edwin Lowe testified that he received a report of a rape at about 2:05 a. m. on May 13th. He stated that he immediately drove to appellant's house, where he saw that appellant's car was gone. He testified that a few minutes later appel-lant arrived home in his car. Lowe stated that he detained appellant for five to ten minutes, waiting for other officers to ar-rive. Lowe testified that at that time ap-pellant was wearing a white Tee-shirt and blue jeans which were partially unbuttoned. He also stated that appellant was wearing no underwear and that he had a strong odor of cologne. A pat-down frisk revealed that appellant was carrying a knife, which the prosecutrix identified as similar to the one used in the rape.

Officer Reese Bullard testified that when he received a call about the rape he went to the prosecutrix's apartment, where he smelled the odor of cologne. He left short-ly and went to appellant's house. When he arrived and saw appellant, he smelled the same odor of cologne as he had smelled in the apartment.

The record reflects that appellant was subsequently arrested[1] and taken to jail, where he later signed a consent form for a search of his car. A subsequent search of his car revealed a bottle of cologne, which was introduced into evidence.

Dr. Rigoberto Santos, a medical doctor at Parkland hospital, testified that he exam-ined the prosecutrix in the early morning of May 13th and found sperm in her vagina.

---

1. The arresting officer testified at trial regarding his probable cause to arrest appellant.

Appellant did not testify in his own behalf.

In his first ground of error, appellant contends that the trial court erred in overruling his motion to quash the indictment. The indictment, in pertinent part, alleged that appellant did:

"intentionally and knowingly have sexual intercourse with M_____ B_____ W_____, hereinafter called Complainant, a female not his wife, without the consent of the Complainant, by means of force and threats, and the Defendant did intentionally and knowingly compel the Complainant to submit to the said act of sexual intercourse by threatening serious bodily injury to be imminently inflicted on the Complainant."

Appellant now contends that the trial court should have quashed the indictment because (1) it failed to allege the manner and means of force and threats used by appellant; (2) it failed to allege the circumstances which made the act of sexual intercourse non-consensual; and (3) it failed to allege to whom the force and threats were directed. Appellant's contentions are without merit.

■ Contrary to appellant's assertion, an indictment for aggravated rape need not set out or describe the specific actions or deeds of the defendant which communicated the threat of serious bodily injury to the prosecutrix. See *Watson v. State,* 548 S.W.2d 676 (Tex.Cr.App.1977); *Childs v. State,* 547 S.W.2d 613 (Tex.Cr.App.1977). The indictment sufficiently alleged the act committed by appellant which "aggravated" the rape under Sec. 21.03(a)(2), and therefore was not subject to a motion to quash on this ground.

■ Appellant's contention that the indictment should have been quashed because it failed to allege the circumstances which made the act of intercourse non-consensual is likewise without merit. The indictment alleged that appellant had sexual intercourse with the complainant "without the consent of the Complainant, by means of force and threats." It is not necessary that

the indictment allege the facts and circumstances of the offense which made the act of sexual intercourse non-consensual. The allegations of "force" and "threats" were sufficient to place appellant on notice of the kind of lack of consent upon which the State would base its case. V.T.C.A., Penal Code, Sec. 21.02(b)(1), (2). See *Watson v. State,* supra; *Childs v. State,* supra; cf. *Rogers v. State,* 550 S.W.2d 78 (Tex.Cr.App. 1977). This being true, no further factual allegations were necessary and the indictment was not subject to a motion to quash on this ground.

■ Appellant also contends that the indictment is defective in that it fails to allege to whom the force and threats were directed. Appellant raises this ground for the first time on appeal since it is not contained in his motion to quash; therefore, only jurisdictional defects will be considered. *Seaton v. State,* 564 S.W.2d 721 (Tex.Cr.App.1978); *Hughes v. State,* 561 S.W.2d 8 (Tex.Cr.App.1978); *American Plant Food Corp. v. State,* 508 S.W.2d 598 (Tex.Cr.App.1974). A jurisdictional defect in an indictment is a defect which renders the indictment insufficient in that it fails to allege the constituent elements of the offense. *Terry v. State,* 517 S.W.2d 554 (Tex. Cr.App.1975).

■ Therefore, this Court must ascertain whether this indictment, when read as a whole, sufficiently charges the offense of aggravated rape. *Childs v. State,* 547 S.W.2d 613 (Tex.Cr.App.1977); *Clark v. State,* 527 S.W.2d 292 (Tex.Cr.App.1975). We hold that the absence of the name of the person to whom the threats were directed does not render the indictment fundamentally defective. The name of the person to whom the threats under V.T.C.A., Penal Code, Sec. 21.02(b)(2) were directed is not a necessary element in the indictment. See *Childs v. State,* supra. Appellant's first ground of error is overruled.

In his second and third grounds of error, appellant contends that the fruits of an illegal detention should have been suppressed. The record reflects that Officer Lowe arrived at appellant's house shortly

after receiving a radio report of the rape. Appellant arrived home a few minutes later, and was detained by Officer Lowe for five to ten minutes, until another officer arrived and placed him under arrest. During this brief detention of appellant, Officer Lowe observed appellant and testified as to this description at trial. Lowe also conducted a "pat-down" frisk, which revealed a pocket knife in appellant's pants. Appellant contends that none of this evidence was admissible as it was obtained as a result of an illegal detention. We disagree.

Out of the presence of the jury, Officer Lowe testified as to the basis for his detention. He testified that during May of 1976 he had been involved in the investigation of other rapes in town; as a result of investigation, he had discovered the name of a suspect in the rapes; appellant was that suspect; there had been other investigations which had placed appellant at the scenes of other rapes within fifteen minutes of the rapes; there had been other investigations which had lead officers to appellant as a suspect. As a result, when he received the radio call about the rape on May 13th Officer Lowe drove to appellant's house and waited. Appellant arrived a few minutes later, and Lowe recognized the car. He testified that appellant fit the physical description of the assailant which was broadcast on the radio. He approached appellant and observed that appellant's jeans were buttoned only at the top and the bottom, and that he was wearing no underwear. As a result of all of the information of which Lowe was aware at that time, he detained appellant for five to ten minutes, until another officer arrived and made the arrest.

■ Circumstances which do not constitute probable cause for arrest may justify temporary detention for the purposes of an investigation, since an investigation is considered to be a lesser intrusion on the personal security. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Adams v. State*, 552 S.W.2d 812 (Tex.Cr.App.1977); *Milton v. State*, 549 S.W.2d 190 (Tex.Cr.App.1977);

*Perez v. State*, 548 S.W.2d 47 (Tex.Cr.App. 1977); *Ablon v. State*, 537 S.W.2d 267 (Tex. Cr.App.1976).

■ The detention is justified if the law enforcement officer has specific, articulable facts, which in light of his experience and general knowledge, together with rational inference from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped for further investigation. *Terry v. Ohio*, supra; *Adams v. State*, supra; *Milton v. State*, supra; *Ablon v. State*, supra. Further, reasonable cause for an investigative stop can be based on information supplied by other persons. *Adams v. Williams*, supra; *Milton v. State*, supra.

■ In the instant case, Officer Lowe had been involved in the investigation of recent rapes in the area; due to his investigation and that of other police officers, he knew that appellant was a prime suspect in the rapes; he knew that appellant had been at the scenes of other rapes; he knew that a rape had just been committed and that appellant's physical description matched that of the assailant. Officer Lowe observed appellant arrive home shortly after the rape was reported and observed his pants partially unbuttoned. We hold that, on the basis of all of this information of which Lowe was aware prior to his detention of appellant, Officer Lowe was justified in detaining appellant some five to ten minutes for further investigation. *Terry v. Ohio*, supra; *Adams v. Williams*, supra; *Adams v. State*, supra; *Milton v. State*, supra; *Perez v. State*, supra; *Ablon v. State*, supra. Thus, Officer Lowe's testimony concerning his detention of appellant was properly admitted.

■ Further, we hold that the knife discovered by Officer Lowe during a "pat-down" frisk of appellant was also properly admitted. As was stated in *Terry v. Ohio*, supra:

"Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may

be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries; and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him."

Officer Lowe testified that he conducted the "pat-down" search for his own protection. The record reflects that at that time Lowe knew that appellant was a suspect in a series of assaultive crimes; he observed that appellant matched the description of an assailant in a recent assaultive crime. Therefore, he was justified in conducting the limited search for his own protection to determine if appellant was armed. *Terry v. Ohio*, supra; *Milton v. State*, supra; *Perez v. State*, supra; *Ablon v. State*, supra. The knife found in this limited search was properly admitted. Appellant's second and third grounds of error are overruled.

■ In his fourth ground of error, appellant contends that the trial court erred in admitting evidence seized in a search of appellant's car. The record reflects that after he was in custody a police officer obtained appellant's consent to search his car. The subsequent search of the car revealed a bottle of cologne which was introduced into evidence at trial. After a hearing out of the presence of the jury, the trial court found that appellant's consent to the search was freely and voluntarily given, without coercion or duress. We hold that the record supports the trial court's findings.

Appellant testified at this hearing, and admitted that he voluntarily signed the consent to search form. He testified that he had been read his *Miranda*[2] rights prior to this time, and that he had talked to his attorney just before he signed the form. He further stated that his attorney had told him not to sign any statements but that the attorney did not say anything about not signing anything else. Appellant stated that he was told that "it would look bad" if he refused to give the consent to search.

Police Officer Donald Robertson testified that he approached appellant at about 1:00 p. m. regarding the search of the car. Robertson testified that he advised appellant of his rights, that appellant gave his consent to the search, and that appellant did not hesitate to sign the consent form. He stated that he had spoken with appellant's attorney prior to this but did not remember the issue of the search mentioned. Robertson stated that he fully informed appellant that any evidence found in the car could be used against him. He further denied that he told appellant that if favorable evidence was found it could be used *for* him. He denied that he told appellant that the car had already been searched or that if appellant refused it would look like he (appellant) was trying to hide something.

■ The protections against warrantless searches and seizures may be waived by an individual's consent to a search. *Rice v. State*, 548 S.W.2d 725 (Tex. Cr.App.1977); *Kolb v. State*, 532 S.W.2d 87 (Tex.Cr.App.1976). The burden of proof is upon the State to show that consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Rice v. State*, supra. Whether a consent to search was voluntary is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Rice v. State*, supra.

In the instant case, appellant testified that he voluntarily signed the consent form. It is uncontroverted that appellant had been warned of his rights and had been told that anything found in the search could be used against him. Officer Robertson's testimony contradicted any testimony by appellant that his consent was given under duress or coercion. From the totality of

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

these circumstances, we conclude that appellant's consent to search his car was freely and voluntarily given. Appellant's fourth ground of error is overruled.

In his fifth ground of error, appellant contends that the trial court erred in admitting evidence that the prosecutrix had identified appellant in a pre-trial lineup which was impermissibly suggestive. The record reflects that approximately nine hours after the offense the prosecutrix viewed a lineup and identified appellant as her assailant. The trial court held a hearing out of the jury's presence and found that the prosecutrix's identification of appellant was based solely upon her having viewed appellant at the time of the offense and that the in-court identification was not influenced by her having viewed the lineup.

■ Where the in-court identification is based upon observations by the witness other than the lineup identification and thus is of independent origin, then the in-court identification is admissible even though the lineup procedure may have been improper. *Thompson v. State*, 480 S.W.2d 624 (Tex.Cr. App.1972). Where the complaining witness' identification of the defendant is based upon an adequate opportunity to view the defendant at the time of the offense, then the identification is of independent origin. *Bermudez v. State*, 533 S.W.2d 806 (Tex.Cr. App.1976).

■ In the instant case, the record clearly supports the trial court's finding that the prosecutrix's identification of appellant was based upon her view of him at the time of the offense. She testified that she got a good look at appellant while he was raping her. Although he had a stocking over his face, it did not distort his facial characteristics. She testified that many lights in her apartment were on during the rape and that one light was shining directly in appellant's face while he was raping her. She further testified that if she had never seen the lineup she would still be able to identify appellant; that the lineup did not

help her in-court identification; and that her identification of appellant was made strictly from her memory of him during the rape. Thus, the evidence supports the trial court's findings that the in-court identification was of independent origin and not the result of the lineup; therefore, the in-court identification by the prosecutrix was properly admitted.[3] *Bermudez v. State*, supra; *Thompson v. State*, supra.

In his sixth ground of error, appellant contends that "the trial court erred in refusing to require the prosecution to investigate for specifically requested evidence favorable to the accused.

The record reflects that appellant filed three motions for discovery, with numerous requests for information. All of these were granted by the trial court. In his third motion for disclosure of evidence favorable to appellant, appellant requested,

"(3) Other evidence indicating that another person is now, as the defendant remains in custody, raping people in the Dallas Area in a manner which leads the police or District Attorney to believe they also may be responsible for the rape for which the defendant now stands charged."

This motion was also granted by the court. At a hearing held prior to trial, the following transpired:

"MR. MILLS: . . . I think Mr. Hinton [the prosecutor] knows that there are other rapes that have taken place when he had the Defendant in custody and what I am specifically asking for here is whether or not any of those cases or identifications have produced evidence which show my client not guilty of the offense for which he has been indicted. In other words, either because of similar scheme of method of committing.

"THE COURT: He's indicted on one case?

---

**3.** We note that all of appellant's testimony that the lineup was suggestive was contradicted by the prosecutrix.

"MR. MILLS: Yes, he's indicted on one case. There have been many, many rapes taking place.

"THE COURT: How in the world could I force Mr. Hinton to investigate any and all rape cases in Dallas County to see whether or not they are similar in nature?

"MR. MILLS: That he already knows about.

"THE COURT: Do you know of any?

"MR. HINTON: No. I know that there have been rapes that have occurred since he has been in jail."

Hinton then denied that he had any knowledge of other rapes similar to the one for which appellant was to stand trial, and stated that he had been assigned no other rape cases since appellant's. Later during the hearing on appellant's discovery motions, Hinton asked that the record reflect that each motion that had been granted had been fully complied with by the State. Mills did not voice an objection and the hearing was later recessed.

Later during the course of trial, out of the presence of the jury, appellant requested the opportunity to examine a police officer regarding other rapes in the community. The trial court granted appellant's request. Officer Bullard testified that there had been other rapes committed since appellant's arrest. He testified that he had not been investigating these, and that he had no knowledge of rapes which were similar in method or nature to that for which appellant was on trial. He stated that Officers Raines and Wallace would be the investigating officers.

Later during the trial, counsel for appellant stated that, regarding this motion for information, he had asked Hinton, the prosecutor, to talk to Officers Wallace and Raines concerning their knowledge of other rapes.

After testimony had concluded, another hearing was held out of the presence of the jury, during which defense counsel again requested this information of Hinton. Hinton reiterated that he had no knowledge of the information which the defense request-

ed. After a lengthy discussion, the trial court directed Hinton to talk to Officer Robertson to see if he had any knowledge of the information which appellant requested. Hinton agreed to do so. Thereafter, the record is silent as to this matter.

■ We hold that the trial court did not err in refusing to require the prosecutor to investigate the other rapes and then turn the material over to appellant. The prosecutor has no duty to investigate other cases in order to supply the defense with information concerning them.

When appellant argued his motion before the trial court, he specifically asked for the information concerning other rapes of which Hinton was already aware. The court granted this motion and Hinton stated that he had no such information. Upon questioning by appellant, Officer Bullard testified that he had no knowledge of the information which appellant was seeking.

At appellant's request, the trial court ordered Hinton to talk to Officer Robertson to see if Robertson had any of the information which appellant was requesting. Thereafter, the record does not show that Hinton did not comply with the court's request or that appellant did not receive information.

Appellant has received all of which he is entitled under his motion. He has not shown that the information which he requested was in the possession of the State, and, in fact, the record indicates that it was not. Therefore, he cannot complain on appeal that he was denied discovery. See *Hoffman v. State*, 514 S.W.2d 248 (Tex.Cr. App.1974); *Rodriguez v. State*, 513 S.W.2d 22 (Tex.Cr.App.1974); *Martinez v. State*, 507 S.W.2d 223 (Tex.Cr.App.1974); *Garcia v. State*, 454 S.W.2d 400 (Tex.Cr.App.1970).

■ Article 39.14, V.A.C.C.P. does not allow broad exploration of prosecution files. *Mott v. State*, 543 S.W.2d 623 (Tex.Cr.App. 1976). Where there is no showing that the matters sought to be discovered are material, or that the items sought are in the possession of the prosecution, appellant is

not entitled to relief on appeal. See *Mott v. State*, supra.

Further, if the matters which appellant sought were police reports or offense reports concerning other rape offenses, these were not discoverable since they are the work product of the police and are exempt from pre-trial discovery. *Holloway v. State*, 525 S.W.2d 165 (Tex.Cr.App. 1975); *Sheldon v. State*, 510 S.W.2d 936 (Tex.Cr.App.1974); *Powers v. State*, 492 S.W.2d 274 (Tex.Cr.App.1973); *Bradshaw v. State*, 482 S.W.2d 233 (Tex.Cr.App.1972). Further, this work product exemption under Article 39.14 extends to prosecution files and papers. *Mott v. State*, supra; *Hoffman v. State*, supra; *Nelson v. State*, 511 S.W.2d 18 (Tex.Cr.App.1974).

Most important, however, is that appellant has made no showing that the information which he sought would in any way be exculpatory or material. See *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Even if appellant had evidence that rapes similar to the one for which he was on trial had been committed after he was in custody, this is not inconsistent with his guilt of the offense, in light of the prosecutrix's positive identification of him as her assailant and other circumstantial evidence of his guilt. See *Florio v. State*, 532 S.W.2d 614 (Tex.Cr.App.1976); *Ferrel v. State*, 429 S.W.2d 901 (Tex.Cr.App.1968); *Loy v. State*, 502 S.W.2d 123 (Tex.Cr.App.1973). Thus, appellant has shown no error and this contention is overruled.

In his seventh and final ground of error, appellant contends that the trial court erred in refusing to grant a mistrial because of an improper question by the prosecutor which implied an extraneous offense. During the State's examination of Officer Bullard, the following transpired:

"[Prosecutor] Q: Detective Bullard, in the last few months, before this arrest, you had been working in a specific area; is that correct?

"[Witness] A: Correct, sir.

"[Prosecutor] Q: Now, was [appellant's] arrest the result of an accident or a mistake, or a guess, or the result of intense police work?

"[Defense attorney]: Judge, I object to that. It is implying extraneous offenses."

The objection was sustained, the question was not answered, and the trial court instructed the jury to disregard the question. However, appellant's motion for a mistrial was denied.

Generally, the mere asking of an improper question will not call for reversal unless it results in obvious harm to the appellant, *Walker v. State*, 555 S.W.2d 454 (Tex.Cr.App.1977); *Graham v. State*, 546 S.W.2d 605 (Tex.Cr.App.1977). We note that the matter was not pursued by the prosecutor. This fact situation does not present us with one of those extreme cases where it appears that the complained-of question was clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Walker v. State*, supra; *Sheppard v. State*, 545 S.W.2d 816 (Tex.Cr.App.1977). The trial judge's prompt instruction to disregard was sufficient to cure error in asking the question. This ground of error is overruled.

The judgment is affirmed.