Hector RAMIREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 1039–83.

Court of Criminal Appeals of Texas, En Banc.

July 18, 1984.

Jerrold R. Davidson, Brownsville, for appellant.

Feynaldo S. Cantu, Jr., Dist. Atty., and Malcolm S. Nettles, Asst. Dist. Atty., Brownsville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted of carrying a weapon on premises licensed to sell alcoholic beverages, in violation of V.T.C.A. Penal Code, Sec. 46.02(a) and (c). Punishment, enhanced by two prior felony convictions, was assessed at life in the Texas Department of Corrections. On appeal appellant's conviction was affirmed by the Corpus Christi Court of Appeals in *Ramirez v. State*, 658 S.W.2d 808, (Tex.App.—Corpus Christi 1983). We granted the appellant's petition for discretionary review in order to consider the Court of Appeals' holding that the action of the police officer in searching appellant and the admission into evidence of a gun obtained as a result of that search was proper. We affirm the holding of the Court of Appeals.

A brief review of the facts surrounding the search is appropriate.

Officer Reynaldo Martinez was patrolling the downtown area of Brownsville when a man approached the police officer and told the officer that a Latin male wearing a yellow T-shirt had a gun in a nearby bar. The informant described the man as having a tattoo of a knife on his right arm. At that time, Officer Martinez got in his patrol car and proceeded directly to the bar. Once inside, the officer recognized one of approximately eight patrons as matching the description given to him by the man on the street. Officer Martinez approached the man sitting at a table and ordered him to stand. Upon standing, Officer Martinez noticed a large bulge in his right pocket. He patted down the suspect, determined that the bulge was a gun, and removed the gun from appellant's pocket. The police officer then arrested the appellant.

Appellant's contention that the State failed to show sufficient probable cause to justify the warrantless search of appellant in that there was no showing that the informant had first-hand knowledge of the facts or reasonably trustworthy information is without merit.

As stated by the Court of Appeals, there is no evidence that the person supplying the information to Officer Martinez was anything but a witness to the crime. The man told the police officer that he was coming from the bar. Officer Martinez testified that he did not know the man who approached him with the information. Upon receiving the information, Martinez proceeded directly to the bar. At the time the officer entered the bar, he had uncorroborated information specifically describing appellant and indicating that he had a gun. He did not search or arrest appellant solely upon the information supplied by the man on the street. Only after *approaching* appellant, who matched the given description, *and after observing the bulge in appellant's pocket* did Officer Martinez pat down the appellant. A police officer in circumstances short of probable cause for arrest may justify temporary detention for the purpose of investigation since an investigation is considered to be a lesser intrusion upon the personal security. *Adams v.*

*Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Milton v. State,* 549 S.W.2d 190, 193 (Tex. Cr.App.1977); *Leighton v. State,* 544 S.W.2d 394 (Tex.Cr.App.1976). "An officer must have specific, articulable facts, which in light of his experience and general knowledge taken, together with rational inferences from those facts, would reasonably warrant the intrusion on the citizen." *Morrison v. State,* (Tex.Cr.App. No. 68,323, Delivered June 20, 1984) (State's Motion for Rehearing) citing *Terry,* supra. See also *Williams v. State,* 621 S.W.2d 609 (Tex.Cr. App.1981) and *Brem v. State,* 571 S.W.2d 314 (Tex.Cr.App.1978). In the course of such a temporary detention, an officer may conduct a limited search for weapons where it is reasonably warranted for his safety or the safety of others. Once Officer Martinez, armed with the uncorroborated "tip", observed the bulge in appellant's pocket he then had sufficient facts to justify a search under *Terry,* supra. In *Terry,* supra, the United States Supreme Court wrote,

> "In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907. See also *Cortinas v. State,* 571 S.W.2d 932 (Tex. Cr.App.1978) and *Perez v. State,* 548 S.W.2d 47 (Tex.Cr.App.1977).

It is this limited pat down search for weapons that we, under the facts of this case, and the Supreme Court in *Terry,* supra, sanction; not a full-blown search for contraband. Under the facts of this case

the police officer's actions that resulted in the finding of the weapon were justified. Upon finding the weapon, Officer Martinez was justified in arresting the appellant. See Art. 14.01, V.A.C.C.P. No fruits of any search incident to that arrest were introduced at appellant's trial.

The judgment of the Court of Appeals is affirmed.

CLINTON, J., dissents.

TEAGUE, Judge, dissenting.

Because the majority erroneously sustains the search of the person of Hector Ramirez, appellant, that was made by Reynaldo Martinez, a Brownsville police officer, inside of the Lighthouse Bar, located "on skid row" in Brownsville, I must dissent.

In light of what the majority upholds in this Orwellian year of 1984, I find the following comment rather interesting: "One hopes the year 2000 will ... find the courts manning [the search and seizure] barrier against whatever form unreasonable governmental intrusion then takes... As for [Art. 1, Section 9, of the Texas Constitution], it should remain as the important bulwark against unreasonable governmental intrusion that it is." *The Constitution of the State of Texas: An Annotated and Comparative Analysis,* at page 35. After reading what the majority upholds today, I shudder to think what it will sustain in the year 2,000.

Art. 1, Section 9, of the Texas Constitution, expressly provides in no uncertain terms: "The people shall be secure in their persons ... from all unreasonable seizures or searches..."

Even though it is only unreasonable searches and seizures that are forbidden by Art. 1, Section 9, as a practical matter, this Court in the past has equated reasonableness with the requirements of probable cause for a warrant. One exception to this rule of construction, that is inapplicable to this cause, is that where the detaining police officer has specific and articulable

facts which, taken together with rational inferences from those facts, reasonably warrant suspicion on his part that the suspect is armed and about to engage in criminal conduct, then the officer has the right to physically seize the suspect and conduct a protective frisk for weapons without a warrant. See *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The majority, unfortunately, creates today another exception to the warrant requirement.

The facts that relate to the issue are undisputed.

A lay person, who was unknown to Officer Martinez, approached Martinez and told him that an individual was in a nearby bar in possession of a gun. He did not articulate to Martinez how he knew the individual had a gun in his possession. Thus, it is just as reasonable to assume that the information was based upon hearsay as it is to assume that the information was from personal knowledge. Martinez did not question the person as to why he had concluded that an individual in the bar had possession of a gun. However, the person did give Martinez a physical description of the person he said was in possession of a gun in the bar.

Armed only with this information, Martinez went inside of the bar, where he eventually saw a person, who was later identified as appellant, who matched the physical description that the unknown person had given Martinez.

At that moment in time, appellant was merely sitting at a table, doing nothing of a criminal nature, nor acting out of the ordinary. Prior to this occasion, Martinez did not know appellant.

Martinez "ordered" appellant to stand up, and appellant obeyed that command, after which Martinez saw a bulge in appellant's right pants pocket. Martinez then frisked appellant and found a gun on his person, for which appellant was prosecuted for possessing. See V.T.C.A., Penal Code, Section 46.02(a) and (c). His punishment, enhanced, was assessed at life imprisonment.

The majority holds that "Under the facts of this case [Martinez'] actions that resulted in the finding of the weapon were justified." I strongly disagree with this conclusion.

In arriving at its conclusion, the majority relies upon *Terry v. Ohio*, supra. Its reliance, however, is misplaced.

*Terry v. Ohio*, supra, mandates that before a lawful stop and frisk are permissible, the following must first be established: the detaining police officer must have specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant suspicion on his part that the suspect is armed and about to engage in criminal conduct. If the police officer has satisfied these requirements, he may then, *but only then*, physically seize the suspect and conduct a protective frisk for weapons.

In this instance, Martinez was not armed with specific and articulable facts that would lead a reasonable and cautious person to believe that appellant was armed with a gun. Martinez was possessed only with a conclusory statement from an unknown person when he "ordered" appellant to stand up. From that moment forward, appellant had been "seized," if not arrested, by Martinez.

By allowing a bare, uncorroborated conclusory statement by an unknown and unidentified person to constitute the "articulable suspicion" required by *Terry v. Ohio*, supra, to become the law of this State, the majority subjects all of our citizenry to warrantless searches by police officers based on nothing more than unsupported and uncorroborated statements by unknown persons.

*Terry v. Ohio*, supra, did not hold or approve of arrests or seizures of persons being made by the police for mere purposes of making an investigation. Nor did *Terry v. Ohio*, supra, hold that the good faith belief of the police officer justified an arrest or seizure of a person for mere purposes of making an investigation. Nor did *Terry v. Ohio*, supra, hold that an officer's

inarticulate hunch justified unwarranted intrusions upon a citizen's constitutionally guaranteed right to be free from unreasonable searches and seizures.

The majority, however, has now engrafted onto our law what the Supreme court did not hold in *Terry v. Ohio*, supra. To this novel, but frightening holding, I respectfully dissent. Orwell, have you read what the majority has written?