

## NUMBER 13-07-00179-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**SHAWNCY W. PEREZ,**                                                                     **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                     **Appellee.**

### On appeal from the County Court at Law
### of Kleberg County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Justice Garza**

Appellant, Shawncy W. Perez, was charged by information with driving while intoxicated ("DWI"), his second DWI offense. *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003), § 49.09(a) (Vernon Supp. 2007) (providing that a second DWI offense constitutes a Class A misdemeanor). Perez pleaded guilty to the charges contained in the information,

and the trial court assessed punishment at 365 days confinement in the Kleberg County Jail suspended for 24 months of community supervision and a fine of $750.00. By one issue, Perez contends that because the stop of his vehicle was illegal and unconstitutional, evidence supporting the alleged DWI offense was the "fruit of [an] unlawful detention." *See* U.S. CONST. amends. IV, V, VI, XIV; *see also* TEX. CONST. art. 1, § 9 (barring unreasonable searches and seizures); TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005) (prohibiting evidence illegally seized to be used against an accused in a criminal trial). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 27, 2006, Perez was charged by information with DWI. *See* TEX. PENAL CODE ANN. § 49.04; *id.* § 49.09(a). The information contained an enhancement paragraph providing that Perez had been previously convicted of DWI on November 25, 2003. The charges against Perez stemmed from a traffic stop initiated by Kingsville Police Officer Ted Figueroa during the evening hours of August 26, 2006.

On October 4, 2006, Perez filed a motion to suppress evidence seized by law enforcement in connection with his detention and arrest. On January 16, 2007, the trial court conducted a hearing on Perez's motion to suppress. At the hearing, only one witness was called: Officer Figueroa.

Officer Figueroa testified that he was a police officer for the City of Kingsville and that he was patrolling the parking lot of RAX Sports Bar in Kingsville, Texas on the night of Perez's arrest. While patrolling the parking lot, Officer Figueroa was approached by an unidentified female who told the officer she had spotted a male and a female in a maroon Blazer fighting and arguing. She further described the vehicle as having several pipes on

2

the front grill which were used for storing fishing poles. The woman told Officer Figueroa that she observed the male punch the female occupant of the vehicle during the course of the argument.[1] She also noted that she did not know the occupants of the vehicle and that the vehicle was headed northbound on 14th Street in Kingsville.

Fearing for the safety of the vehicle's occupants, Officer Figueroa advised the Kingsville Police Department dispatch operator of the alleged events and proceeded to drive down 14th Street. Once Officer Figueroa located the vehicle matching the description provided by the unidentified woman, he initiated a traffic stop to check on the welfare of the vehicle's occupants and to determine if any medical attention was needed.[2] Officer Figueroa testified that once he pulled over Perez, he identified himself, advised Perez of the reason for the stop, and asked Perez to exit and step to the rear of the vehicle. Officer Figueroa also instructed the female occupant to step to the front of the vehicle. Officer Figueroa noted that he did this to question both parties separately about the alleged assault to prevent either party from intimidating the other. Officer Figueroa noted that at the time he first identified himself to Perez and the female occupant, both parties smelled of alcohol. He further stated that both parties had red, watery eyes; Perez's speech was slurred; Perez had a hard time keeping his balance; and that the vehicle smelled of alcohol.

In spite of this finding, Officer Figueroa commenced the questioning of both parties

---

[1] On cross-examination, Officer Figueroa testified that he did not know who the unidentified woman was and that she had not provided the police with information in the past.

[2] Officer Figueroa noted that he pulled over Perez's vehicle without observing any traffic violations; he admitted that the traffic stop was based solely on the unidentified woman's report and his duty to ensure that the parties were safe. At the time of the stop, Perez did not have any outstanding warrants for his arrest.

3

concerning the alleged assault. According to Officer Figueroa, both parties stated that no assault had taken place, but that they were merely arguing over an unidentified issue. Both parties indicated that everything was alright. Neither party exhibited any injuries. Officer Figueroa then asked Perez if he had been drinking. Perez stated that he had drank three or four alcoholic beverages that evening.

Officer Figueroa then testified that while questioning Perez, Officer Cindy Garcia arrived at the scene and conducted field sobriety tests on Perez. Officer Figueroa explained that Officer Garcia conducted the sobriety tests because she was more qualified to do so and because he had returned to his squad car to check Perez's background for any outstanding warrants or arrests. Subsequent to Officer Garcia's administration of the field sobriety tests, Perez was placed under arrest for DWI and taken to the Kleberg County Jail.

Officer Figueroa further testified that the entire investigation was conducted in accordance with normal police procedures and that had Perez not exhibited characteristics of alcohol intoxication, he would have been immediately released from the brief detention upon Officer Figueroa's conclusion that no assault had taken place. Officer Figueroa stated that the female occupant was not arrested and was picked up from the scene by an unidentified party.

After the hearing, the trial court denied Perez's motion to suppress on January 16, 2007. On March 12, 2007, Perez filed a "MISDEMEANOR PLEA: WAIVER OF JURY, REQUEST TO WAIVE PRESENTENCE INVESTIGATION, AND APPLICATION FOR PROBATION OF SENTENCE." In this filing, Perez pleaded guilty to the offense of DWI, his second DWI offense. The trial court accepted Perez's plea of guilt and subsequently

4

sentenced him to 365 days' confinement in the Kleberg County Jail suspended for 24 months of community supervision, and imposed a $750.00 fine.

The record does not contain a motion for new trial filed by Perez. However, he filed a notice of appeal on March 12, 2007. The trial court certified Perez's right to appeal on March 14, 2007. This appeal ensued.[3]

## II. STANDARD OF REVIEW

Whether a specific search or seizure was reasonable is a mixed question of law and fact and is reviewed de novo. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (citing *Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004)). We do not engage in our own factual review, rather the trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Trial courts are given almost complete deference in determining historical facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We review the record to determine whether the trial court's ruling is supported by the record and correct under some theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). "We conduct a de novo review of evidence when the resolution of mixed questions of law and fact do not turn on an evaluation of credibility and demeanor." *St. George*, 237 S.W.3d at 725.

When, as in this case, there are no explicit fact findings, and neither party timely

___

[3] As previously mentioned, Perez filed a motion to suppress evidence pertaining to the alleged DWI offense. A motion to suppress is nothing more than a specialized objection to the admissibility of evidence. *See Galitz v. State*, 617 S.W.2d 949, 952 (Tex. Crim. App. 1981) (en banc); *Wilson v. State*, 857 S.W.2d 90, 94 (Tex. App.–Corpus Christi 1993, pet. ref'd). Therefore, Perez's issue has been preserved for appeal. *See* TEX. R. APP. P. 33.1(a).

requested findings and conclusions, we imply the necessary fact findings that would support the court's ruling if the evidence, viewed in the light most favorable to the court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

## III. ANALYSIS[4]

In his sole issue on appeal, Perez contends that the stop of his vehicle was illegal and constituted an illegal search and seizure. Specifically, Perez argues that because Officer Figueroa detained him based solely on an uncorroborated anonymous tip, evidence of his DWI offense was the "fruit of [an] unlawful detention" and, therefore, inadmissible.

### a. Reasonableness of the Detention

The Fourth Amendment to the United States Constitution and article 1, section 9 of the Texas Constitution guarantee the right of the people to be secure against unreasonable searches of their persons, houses, papers, and effects. *See* U.S. CONST. amend. IV; TEX. CONST. art.1, § 9. The Texas Court of Criminal Appeals has recognized three categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). Investigative detentions and arrests are considered seizures for Fourth Amendment purposes. *See Gurrola v. State*, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994); *see also Saldivar v. State*, 209 S.W.3d 275, 281 (Tex. App.–Fort Worth 2006, no pet.).

---

[4] The State has not filed an appellate brief in response to Perez's contentions. *See Siverand v. State*, 89 S.W.3d 216, 219 (Tex. App.–Corpus Christi 2002, no pet.) ("The Texas Rules of Appellate Procedure require appellant to either file a brief or state that he no longer desires to prosecute the appeal. TEX. R. APP. P. 38.8(b). However, there is no corresponding rule requiring the State to file a brief in response to appellant's brief."). It was not incumbent upon the State to file an appellate brief in response to Perez's claim.

6

In deciding whether Perez's detention was reasonable, we view the trial court's factual findings in the light most favorable to its ruling, but we decide the issue of reasonableness as a question of Fourth Amendment law under United States Supreme Court precedent. *Kothe*, 152 S.W.3d at 63. In *Kothe*, the court noted that the supreme court has stated that "Fourth Amendment 'reasonableness' is measured 'in objective terms by examining the totality of the circumstances'; it 'eschew[s] bright-line rules, instead emphasizing the fact-specific nature of the . . . inquiry.'" *Id.* (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

Routine traffic stops are analogous to investigative detentions and are governed by *Terry v. Ohio*, 392 U.S. 1 (1968); *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.–Fort Worth 2007, pet. dism'd); *Gansky v. State*, 180 S.W.3d 240, 242-43 (Tex. App.–Fort Worth 2005, pet. ref'd). A *Terry* analysis has two prongs. *See Terry*, 392 U.S. at 19. First, a court must decide if an officer's action was justified at its inception. *St. George,* 237 S.W.3d at 725-26 (citing *Terry*, 392 U.S. at 19-20). Second, the court must determine whether the search and seizure was reasonably related in scope to the circumstances that justified the interference in the first place. *Id.* at 726; *Kothe*, 152 S.W.3d at 63.

To determine "reasonableness," we utilize an objective standard, asking whether the facts available to the officer at the moment of the search or seizure warrant a person of reasonable caution to believe that the action taken was appropriate. *Terry*, 392 U.S. at 21-22; *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). Furthermore, we balance the nature of the intrusion into an individual's right to be free of arbitrary detentions and intrusions against the public interest at stake. *Zayas v. State*, 972 S.W.2d 779, 789

7

(Tex. App.–Corpus Christi 1998, pet. ref'd).  An investigative detention not based on reasonable suspicion is unreasonable and, thus, violative of the Fourth Amendment.  *See Davis*, 947 S.W.2d at 243; *see also Adams v. Williams*, 407 U.S. 143, 145-46 (1972) (intimating that an investigation is considered to be a lesser intrusion upon one's personal security); *Milton v. State*, 549 S.W.2d 190, 193 (Tex. Crim. App. 1977) (same).

**b. Whether Officer Figueroa's Action was Justified at its Inception**

The test for determining the legality of a stop that warrants further investigation is whether the officer can point to specific articulable facts, which in light of the officer's personal knowledge and experience, together with other inferences from those facts, would warrant such an intrusion.  *Vannatta v. State*, 773 S.W.2d 771, 773 (Tex. App.–Corpus Christi 1989, writ dism'd).  A police officer may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information.  *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).  However, there must be a "reasonable suspicion" by the officer that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime.  *Gurrola*, 877 S.W.2d at 302.  "Where the initial detention is unlawful, any evidence seized subsequent to such a detention is inadmissible."  *Id.*

Texas courts have repeatedly held that an anonymous tip may provide sufficient justification for police officers to commence an investigation.  *See Clemons v. State*, 605 S.W.2d 567, 570 (Tex. Crim. App. 1980); *Mann v. State*, 525 S.W.2d 174, 176 (Tex. Crim. App. 1975); *George v. State*, 509 S.W.2d 347, 348 (Tex. Crim. App. 1974); *see also*

8

*Vannatta*, 773 S.W.2d at 773; *Ramirez v. State*, 658 S.W.2d 808, 810 (Tex. App.–Corpus Christi 1983), *aff'd*, 672 S.W.2d 480 (Tex. Crim. App. 1984).

In *Ramirez*, for example, an unidentified passerby approached a patrolling police officer and told him that a "Latin male wearing a yellow T-shirt had a gun in a nearby bar." 672 S.W.2d at 481-82. The officer went to the bar, identified the suspect, asked him to step outside, frisked him, and found a pistol. *Id.* The court of criminal appeals held that the actions of the officer were valid under *Terry*, with the report of the offense and the description of the accused giving rise to a reasonable suspicion to justify the stop. *Id.*

Conversely, in *Glass v. State*, 681 S.W.2d 599 (Tex. Crim. App. 1984), the court of criminal appeals concluded that an anonymous tip did not authorize a stop. In *Glass*, a dispatcher for the Austin Police Department received a call from an anonymous person who stated that the drivers of a "brown over beige El Camino" and a "blue Fairlane" were shooting at each other near the intersection of Parker and Oltorf Streets. *Id.* at 600. After stationing themselves at the reported intersection, Austin police officers spotted a brown and beige El Camino.[5] *Id.* The officers stopped the vehicle and asked the driver to step out. *Id.* at 601. A search of the passenger compartment revealed two pistols and methamphetamine. *Id.*

The court of criminal appeals concluded that the investigative stop did not meet the standards set forth in *Terry*. Specifically, the court noted:

---

[5] The court of criminal appeals noted that once the police officers stationed themselves at the intersection, "they saw no unusual activity occurring or taking place, such as persons in one vehicle shooting at persons in another vehicle" and that they observed the "brown over beige El Camino" traveling south on Parker Lane about three or four minutes after they had arrived at the intersection. *Glass v. State*, 681 S.W.2d 599, 600 (Tex. Crim. App. 1984).

9

In this instance, the record does not reflect when the alleged incident occurred or when the anonymous report was received, and therefore does not show any proximity of time of the stop to the events held by the court of appeals to justify the stop of the vehicle appellant had been driving. *Without such proximity in time, it would not be reasonable to conclude, solely on the basis of the match of color and make of the car, that the car stopped was the car involved in the reported incident.* Thus, the record does not support a finding that the anonymous tip authorized the stop of the automobile driven by appellant.

*Id.* at 601-02 (emphasis added).

In the instant case, the justification for the stop of Perez's vehicle is more akin to the situation in *Ramirez* than in *Glass*. Here, an unidentified female approached Officer Figueroa in person and gave him specific information about a possible assault, which is a criminal act as defined in the penal code. *See* TEX. PENAL CODE ANN. § 22.01(a) (Vernon Supp. 2007).[6] The unidentified female noted that Perez had just left the RAX Sports Bar in his maroon Blazer with pipes on the grill, that she observed Perez punch his female companion, and that he was heading northbound on 14th Street. Moreover, the unidentified female provided Officer Figueroa with the necessary information with respect to proximity in time such that Perez's stop was not solely premised on the "match of color

---

[6] Section 22.01(a) of the Texas Penal Code provides:

(a) A person commits an offense [of assault] if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse;

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PENAL CODE ANN. § 22.01(a) (Vernon Supp. 2007).

10

and make of the car." *See Glass*, 681 S.W.2d at 601-02.

Perez, however, relies heavily on Justice Stevens's dissent in *Alabama v. White*, 496 U.S. 325, 333 (1990) for the contention that because the woman was unidentified and had not given information to the police before, the information relied upon by Officer Figueroa did not establish reasonable suspicion for the stop of Perez's vehicle. In *White*, Justice Stevens commented that:

> [a]nybody with enough knowledge about a given person to make her a target of a prank, or to harbor a grudge against her, will certainly be able to formulate a tip about her like the one predicting Vanessa White's excursion. In addition, under the Court's holding, every citizen is subject to being seized and questioned by any officer who is prepared to testify that the warrantless stop was based on an anonymous tip predicting whatever conduct the officer just observed.

*Id.*

The majority in *White* acknowledged Justice Stevens's concerns but emphasized the importance of the reporter's "veracity," "reliability," and "basis of knowledge" in deriving reasonable suspicion. *Id.* at 328-29. Specifically, the *White* majority noted that "[s]ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Id.* at 329. The *White* majority further intimated that the officer must articulate something more than an "inchoate and unparticularized suspicion or 'hunch'" and that the Fourth Amendment requires "some minimal level of objective justification" for making the stop. *Id.* at 329-30.

In the instant case, Officer Figueroa's testimony at the motion to suppress hearing established articulable facts that, based on his personal knowledge and experience,

warranted such an intrusion of Perez's security. The trial court concluded that the unidentified woman provided honest and reliable information to Officer Figueroa given that: she was present in the RAX Sports Bar parking lot where the alleged assault was perpetrated by Perez; she approached Officer Figueroa personally; and the information provided by the unidentified woman was generally true.[7] *See Ross*, 32 S.W.3d at 855 (holding that the trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony). The unidentified woman: (1) accurately described the make and model and Perez's vehicle; (2) provided accurate information as to the proximity of the alleged crime; (3) noted that she did not know Perez or his female companion (i.e., seeming to negate any implication that the report was retaliatory in nature); and (4) provided accurate information as to the parties involved. We note that Officer Figueroa's investigation did not yield conclusive evidence establishing that the alleged assault took place; however, we conclude that Officer Figueroa had more than an unparticularized suspicion to investigate the alleged assault and that a person of reasonable caution would have investigated the potential for bodily harm to another in these circumstances.

Officer Figueroa testified that upon receiving the information from the woman, he quickly analyzed the veracity of the statements and concluded that the information received was accurate and warranted an investigation. Officer Figueroa testified that his determination as to the veracity of the unidentified female's report comported with usual

_____

[7] It is noteworthy that in making the report of criminal activity, the unidentified female subjected herself to criminal liability—a class B misdemeanor—for making a false report to a peace officer or law enforcement employee. *See* TEX. PENAL CODE ANN. § 37.08 (Vernon 2003).

police customs and policies. Furthermore, in speaking to the unidentified woman, Officer Figueroa was free to ask follow-up questions to further determine the honesty and veracity of her statements. In examining the totality of the circumstances, we conclude that Officer Figueroa provided sufficient articulable facts at the motion to suppress hearing to establish a reasonable suspicion that Perez had assaulted his female companion, thus justifying the stop.

**c. Whether the Search and Seizure Reasonably Related to the Justification for the Initial Interference**

Under the second *Terry* prong, an investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *See Florida v. Royer*, 460 U.S. 491, 500 (1983); *Kothe,* 152 S.W.3d at 63; *Davis*, 947 S.W.2d at 243. Once an officer concludes the investigation of the conduct that initiated the stop, a continued detention is permitted only if there is reasonable suspicion to believe another offense has been or is being committed. *Saldivar,* 209 S.W.3d at 282; *see Davis*, 947 S.W.2d at 243; *McQuarters v. State*, 58 S.W.3d 250, 256 (Tex. App.–Fort Worth 2001, pet. ref'd); *see also Robinette*, 519 U.S. at 41 (Ginsburg, J., concurring) (Once police satisfy the reason for the stop, they may not use the stop as a "fishing expedition for unrelated criminal activity"). In addition, the United States Supreme Court has refused to place any rigid time limits on *Terry* stops; instead, the issue is "'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *Kothe*, 152 S.W.3d at 64-65 (quoting *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985)).

Officer Figueroa testified that in determining whether the assault transpired, he

13

questioned both Perez and the female occupant separately, and he observed both parties for visible signs of injuries. In questioning the parties about the alleged assault, Officer Figueroa noticed that Perez: (1) smelled of alcohol; (2) had watery eyes; (3) slurred his speech; and (4) had trouble keeping his balance. Based on these observations and Perez's admission that he had drank three or four alcoholic beverages that night, Officer Figueroa had sufficient information to give him reasonable suspicion that Perez had been driving while intoxicated. As a result, Officer Garcia commenced a battery of field sobriety tests, which Perez failed and which ultimately led to his arrest. Officer Figueroa further noted that after he concluded that an assault had not taken place, Perez would have been free to leave the scene had signs of alcohol intoxication not been present.

The evidence demonstrates that the State satisfied the second prong of *Terry* and that the continued detention of Perez to investigate a possible DWI offense was permissible. *See Davis*, 947 S.W.2d at 243; *Saldivar*, 290 S.W.3d at 282.

In sum, we conclude that the evidence adduced at the motion to suppress hearing demonstrated that the report made by the unidentified woman was sufficient to give Officer Figueroa reasonable suspicion that an assault had been or was in the process of being committed. Therefore, Officer Figueroa was justified in conducting a brief investigatory detention in accordance with *Terry*. While in the process of investigating the alleged assault, Officer Figueroa procured sufficient information to give him reasonable suspicion that Perez had been driving while intoxicated. We are of the opinion that Officer Figueroa's actions did not constitute a "fishing expedition for unrelated criminal activity." *See Robinette*, 519 U.S. at 42 (Ginsburg, J., concurring); *see also Davis*, 947 S.W.2d at 243. We further conclude that the evidence supporting Perez's conviction for driving while

14

intoxicated was not the "fruit of [an] unlawful detention." Accordingly, we overrule Perez's sole issue on appeal.

## IV. Conclusion

We affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 29th day of May, 2008.