**Affirmed and Memorandum Opinion filed July 10, 2012.**



**In The**

# Fourteenth Court of Appeals

_____

### NO. 14-11-00542-CR

_____

**ANTHONY TYRONE JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1279386**

## M E M O R A N D U M   O P I N I O N

Anthony Tyrone Jones appeals his conviction for unlawful possession of firearm.[1] Appellant contends that the trial court erred by denying his motion to suppress evidence obtained through an illegal search. We affirm.

### Background

Appellant was indicted for unlawful possession of a firearm on October 18, 2010. Appellant filed a pretrial motion to suppress evidence on October 28, 2010. The trial

---

[1] *See* Tex. Penal Code Ann. § 46.04(a) (Vernon 2011).

court held a hearing on appellant's motion to dismiss on May 5, 2011. Appellant alleged that a police officer searched his backpack without probable cause, without a search warrant, and without his consent. Appellant contends that the introduction into evidence of the gun found during the search violated his rights under the Fourth Amendment of the United States Constitution and Texas Code of Criminal Procedure Article 38.23.

Officer Christopher Aranda of the Houston Police Department testified at the hearing that he was on patrol in his police car at approximately 1:00 a.m. in a "high crime area" in Houston, Texas, on September 26, 2010. This part of Houston has many motor vehicle burglaries, robberies, and thefts. He testified that he observed appellant jaywalking; appellant crossed Austin Street at Gray Street while the crosswalk sign said "Do Not Cross." After observing this, Aranda pulled next to appellant and stopped him for jaywalking. Aranda testified that, for safety reasons, he then exited his police car and asked appellant how he was doing; whether he had identification; and whether he had anything illegal or dangerous on his person. He asked for identification in case he needed to write appellant a ticket. He asked whether appellant had anything illegal to make sure that he was the only person carrying a weapon. According to Aranda, he considered appellant to be detained at this point.

Aranda testified that appellant ignored his questions at first, so Aranda repeated them. Appellant then told Aranda that he had a weapon with him which he had "just bought . . . off the street for $50." Appellant did not make any furtive movements or reach for his backpack, pockets, or waistband. Aranda suspected that appellant had the gun in the backpack so he took appellant's backpack; placed appellant in handcuffs; patted appellant down; and placed appellant in the patrol car. Aranda testified that he had not placed appellant under arrest at that time. After the pat-down failed to reveal a weapon, Aranda searched appellant's backpack and found a gun and ammunition. Aranda then checked to see whether the gun was stolen. Aranda also checked whether appellant was a felon or had any warrants. Aranda discovered that the gun had not been reported stolen. He also discovered that appellant was a felon on parole for burglary of

habitation until 2048. Appellant also was previously convicted of possession of a controlled substance. Aranda testified that he considered appellant to be under arrest for unlawful possession of a firearm at this point.

Appellant testified at the hearing that he found two plastic shopping bags at a bus stop and put them in his backpack. He testified that he knew one bag carried ammunition but did not know the other bag contained a gun. According to appellant, he did not cross the street illegally but instead waited for the light to signal that he could cross. Appellant further testified that Aranda never asked him if he had identification or if he was carrying anything illegal or dangerous. He stated that he did not tell Aranda that he had just bought a gun. Finally, appellant testified that he was on parole and understood the consequences of being caught in possession of a weapon, and that is why he would not tell the officer anything.

After the hearing, the trial court found Aranda's testimony to be credible and denied appellant's motion to suppress.

A two-day jury trial was held on June 14, 2010. The jury found appellant guilty of unlawful possession of a firearm and sentenced him to twenty-five years' confinement. Appellant filed a timely notice of appeal.

## Analysis

Appellant argues that the trial court erred in denying his motion to suppress because he was searched without probable cause, without a search warrant, and without consent.

### I. Standard of Review and Applicable Law

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Vasquez v. State*, 324 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2010, pet ref'd) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). The trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented at a suppression hearing. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex.

3

Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, but we review *de novo* the court's application of the law to the facts. *Id.* at 25. We view the evidence presented on a motion to suppress in the light most favorable to the trial court's ruling. *Id.* at 24. Where the record does not reflect the trial court's legal theory for denying the motion to suppress evidence, the ruling must be affirmed if it is reasonably supported by the record and can be upheld on any valid theory of law applicable to the case. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

The Fourth Amendment is not a guarantee against all searches and seizures, but only against unreasonable searches and seizures. *United States v. Sharpe*, 470 U.S. 675, 682 (1985). A detention that restricts a citizen's liberty is a seizure and must be subject to Fourth Amendment scrutiny. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). An officer may stop and briefly detain a person in the absence of probable cause for arrest if he has a reasonable suspicion that the person is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 22 (1968); *Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002). This is an investigative detention or "*Terry* stop." *Balentine*, 71 S.W.3d at 768. Reasonable suspicion exists when an officer "has specific, articulable facts that, combined with rational inferences from those facts, lead him reasonably to conclude that the person detained is . . . engaged in criminal activity." *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)). The determination of reasonable suspicion is made by considering the totality of the circumstances. *Ford*, 158 S.W.3d at 492–93.

An officer can perform a reasonable search for weapons to ensure his safety if he can show "specific and articulable facts which would cause a reasonably prudent man in the circumstances to believe that the suspect is armed and dangerous." *Balentine*, 71 S.W.3d at 769 (citing *Terry*, 392 U.S. at 27). This is an objective test — there is no requirement that the officer feel personally threatened. *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000). The purpose of this search must be to allow the officer "to

pursue his investigation without fear of violence" rather than the discovery of evidence. *Balentine*, 71 S.W.3d at 769. This limited search may extend beyond the suspect's person. *Michigan v. Long*, 463 U.S. 1032, 1049–51 (1983); *Worthey v. State*, 805 S.W.2d 435, 437–38 (Tex. Crim. App. 1991). An officer must have a reasonable suspicion based on specific facts that the suspect is armed and dangerous and the weapon is where the officer searches. *See Worthey*, 805 S.W.2d at 438; *Woods v. State*, 970 S.W.2d 770, 776 (Tex. App.—Austin 1998, pet. ref'd). The search must be confined as is necessary to investigate whether or not the suspect is armed. *Woods*, 970 S.W.2d at 776.

## II. Motion to Suppress

Appellant argues that the backpack search was not a reasonable search conducted for Aranda's safety, and that Aranda's actions "exceeded the scope of a frisk in that [Aranda] used the jaywalking stop as an impetus for a pretextual search" of appellant's backpack. According to appellant, Aranda had probable cause to stop appellant due to the Transportation Code violation, but Aranda had "less than a 'vague suspicion'" that appellant was carrying a weapon. Appellant argues that there are no specific articulable facts showing that he posed any danger to Aranda other than the disputed testimony that appellant volunteered to Aranda that he had a gun on his person. Therefore, appellant argues, Aranda was not justified in performing a *Terry* search of the backpack, and the introduction of the gun into evidence violated his rights under the Fourth Amendment of the United States Constitution as well as Texas Code of Criminal Procedure Article 38.23. *See* U.S. CONST. amend. IV; Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). Appellant does not dispute the validity of his detention.

An officer may briefly detain someone if there is reasonable suspicion of criminal activity established by specific facts that cause the officer to believe that the suspect is engaged in criminal activity. *Terry*, 392 U.S. at 21–22; *Elias*, 339 S.W.3d at 674. Here, Aranda personally witnessed appellant cross the street while the sign flashed "Do Not Cross." Section 552.002(c) of the Texas Transportation Code provides that a pedestrian

5

may not cross a roadway in the direction of a "Don't Walk" signal. Tex. Transp. Code Ann. § 552.002(c) (Vernon 2011). Therefore, Aranda observed appellant commit the offense of jaywalking. Aranda had authority to stop and detain appellant. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). Aranda's initial detention of appellant was proper.

An officer also has authority to ask general questions of a subject so long as they are reasonably related to the purpose of the contact. *Glazner v. State*, 175 S.W.3d 262, 265 (Tex. Crim. App. 2005). Here, Aranda asked appellant whether he had any identification and whether he had anything illegal on his person. Aranda testified that he needed the identification in case he decided to cite appellant for the traffic violation. Further, Aranda testified that he asked appellant whether he had anything illegal because he wanted to make sure he was the only person with a weapon during the stop. These questions are related to the purpose of the stop. *See Balentine*, 71 S.W.3d at 771 ("investigation, maintenance of the status quo, or officer safety" all may be goals of a stop). The questioning of appellant was proper.

Aranda's heightened suspicion of further criminal activity beyond jaywalking justified further investigation after appellant volunteered that he was carrying something illegal — a weapon. *See Glazner*, 175 S.W.3d at 265–66 (holding that a suspect who admits possession of marijuana justified further investigation during a traffic stop). Aranda was working at 1:00 a.m. in a "high crime area" with a suspect who had just stated that he was carrying a weapon. These circumstances gave Aranda a reasonable suspicion and allowed him to further detain and investigate appellant. *See id.*; *Worthey*, 805 S.W.2d at 437–38; *Woods*, 970 S.W.2d at 773.

Additionally, an officer may perform a reasonable search for weapons to ensure his safety if there are specific facts that "would cause a reasonably prudent man in the circumstances to believe that the suspect is armed and dangerous." *Balentine*, 71 S.W.3d at 769. Appellant contends that he never made any furtive movement to reach for his backpack, pockets, or waistband. Aranda testified that appellant never acted in a manner

6

that would reasonably suggest that he was dangerous. Appellant argues therefore that the only justification for a search is the officer's disputed testimony that appellant volunteered information about having a gun on his person.

Although appellant disputed telling Aranda that he had just bought a weapon, the trial court, as the sole fact finder, found Aranda's testimony to be credible and chose to believe it. The trial court was free to believe or disbelieve the testimony of any witness. *Vasquez*, 324 S.W.3d at 918. We must defer to the trial court's findings on factual issues based on credibility of the witnesses. *Weide*, 214 S.W.3d at 24–25.

Aranda, working in a "high crime area" notorious for robberies and thefts at 1:00 a.m., encountered a suspect who volunteered possessing a weapon he just bought "off the street for $50." Considering these circumstances, a reasonable person would have believed that appellant was armed and dangerous; therefore, a protective *Terry* search was proper. *See Castleberry*, 332 S.W.3d at 463–465, 469 (officer working alone, late at night, in a high crime area had a reasonable suspicion to search the suspect for weapons after he reached for his waistband when the officer asked him for identification); *Ramirez v. State*, 672 S.W.2d 480, 482 (Tex. Crim. App. 1984) (officer had reasonable suspicion to perform a *Terry* search based upon uncorroborated tip that suspect had a gun).

After a pat down revealed no weapon, it was reasonable for Aranda to search appellant's backpack for weapons. An officer may conduct a limited search for weapons in the course of an investigation when it is reasonably warranted for officer safety and the safety of others. *Terry*, 392 U.S. at 27; *Worthey*, 805 S.W.2d at 437; *Ramirez*, 672 S.W.2d at 482; *Guevara v. State*, 6 S.W.3d 759, 764 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). This search may extend beyond the person in the absence of probable cause to arrest. *Worthey*, 805 S.W.2d at 437–38 (search of a purse when suspect tried to hide the purse was proper *Terry* search); *Woods*, 970 S.W.2d at 773 (search of a purse through an x-ray machine was proper *Terry* search when suspect acted suspiciously upon seeing officers and metal detectors in the courthouse). The search must be limited to areas where one reasonably could believe the weapon is placed or hidden. *See Worthey*,

7

805 S.W.2d at 438. Aranda had reasonable grounds for believing that appellant had a weapon in his backpack and therefore was authorized to conduct a *Terry* search for his own safety. *See Worthey*, 805 S.W.2d at 437–38; *Woods*, 970 S.W.2d at 776. It would have been reasonable for Aranda to believe that the gun posed a threat to his safety because appellant might still gain control over the gun or it could accidentally fire while still in the backpack. Therefore, Aranda was justified in performing a *Terry* search of appellant's backpack. *See Long*, 463 U.S. at 1051–52 (a possible weapon underneath the seat of a vehicle was still dangerous even though the suspect was temporarily detained behind the vehicle with another police officer).

Accordingly we overrule appellant's issue.

**Conclusion**

We affirm the trial court's judgment.

/s/      William J. Boyce
         Justice


Panel consists of Justices Seymore and Boyce, and Senior Justice Mirabal.[2]

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[2] Senior Justice Margaret Garner Mirabal sitting by assignment.